## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JAMES MILLER, Individually and for Others Similarly Situated,**<br><br>**v.**<br><br>**MID-ATLANTIC ENGINEERING-QA/QC INSPECTIIONS, LLC** | Case No.<br><br>Jury Trial Demanded<br><br>FLSA Class & Collective Action<br><br>March 10, 2021 |

## CLASS ACTION COMPLAINT

### SUMMARY

1. Mid-Atlantic Engineering-QA/QC Inspections, LLC (Mid-Atlantic) failed to pay James Miller (Miller), and other workers like him, overtime as required by the Fair Labor Standards Act (FLSA) and the Connecticut Minimum Wage Act, Conn. Gen. Stat. Sections 31-58, et seq. (CMWA).

2. Instead, Mid-Atlantic paid Miller, and other workers like him, the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

3. Miller brings this class and collective action to recover unpaid overtime and other damages for himself and the class.

### JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

6. The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

8. Miller worked in this District.

## THE PARTIES

9. Miller was an hourly employee of Mid-Atlantic.. His title was an environment, health, and safety (EHS) manager or Quality Assurance/Quality Control Manager.

10. Miller worked for Mid-Atlantic from August of 2018[1] until June 2019.

11. Miller's written consent is attached as <u>Exhibit A.</u>

12. Mid-Atlantic is a Maryland corporation headquartered in Maryland.

13. Mid-Atlantic Engineering-QA/QC Inspection, LLC may be served with process by serving its registered agent Tammie D. Stone, 36625 Wainwright Road, Mechanicsville, Maryland, 20659.

## COVERAGE UNDER THE FLSA

14. At all relevant times, Mid-Atlantic was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. At all relevant times, Mid-Atlantic was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. At all relevant times, Mid-Atlantic was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working

---

[1] This lawsuit seeks damages under the FLSA dating back to March 19, 2017 and under the CMWA dating back to March 19, 2018 because the statutes of limitations were tolled by order of Governor Lamont on March 19, 2020 and that order is still in place.

on goods or materials – such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment – that have been moved in or produced for commerce.

17. At all relevant times, Mid-Atlantic had an annual gross volume of sales made in excess of $1,000,000.

18. At all relevant times, Miller and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## THE FACTS

19. Mid-Atlantic provides quality assurance and quality control employees to construction and power industries.

20. Mid-Atlantic staffs workers to the power and construction industry.

21. Miller was an hourly employee of Mid-Atlantic.

22. Mid-Atlantic hired Miller in August of 2018.

23. Miller performed work for Mid-Atlantic at the Bridgeport Harbor Station power plant in Bridgeport, Connecticut.

24. Miller was an environment, health, and safety (EHS) employee of Mid-Atlantic.

25. Miller conducted daily audits, safety meetings, and drafted daily/weekly reports.

26. Mid-Atlantic paid Miller $60 per approved hour worked.

27. Miller left Mid-Atlantic's employment in June 2019.

28. Miller reported the hours he worked to Mid-Atlantic on a regular basis.

29. If Miller worked fewer than 40 hours in a week, he would be paid only for the hours worked.

30. Miller regularly worked over 40 hours in a week.

31. Miller routinely worked 65 or more hours a week.

32. The hours Miller and the Putative Class Members worked are reflected in Mid-Atlantic's records.

33. Mid-Atlantic paid Miller at the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

34. Rather than receiving time and half as required by the FLSA, Miller only received "straight time" pay for overtime hours worked.

35. For example, if Miller worked 65 hours, he was paid $60 for all 65 hours when he should have been paid $90 for his 25 hours of overtime work. He should have received $4,650 but instead received only $3,900, resulting in unpaid wages in the amount of $750.

36. Mid-Atlantic's "straight time for overtime" payment scheme violates the FLSA and the Connecticut Minimum Wage Act.

37. Mid-Atlantic was aware of the overtime requirements of the FLSA and the Connecticut Minimum Wage Act.

38. Mid-Atlantic nonetheless failed to pay certain employees, such as Miller, overtime.

39. Mid-Atlantic's failure to pay overtime to these workers was, and is, a willful violation of the FLSA.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

40. Mid-Atlantic's illegal "straight time for overtime" policy extends beyond Miller.

41. Mid-Atlantic paid numerous workers around the country using the same unlawful scheme.

42. Any differences in job duties do not detract from the fact that these workers were entitled to overtime pay.

43. The workers impacted by Mid-Atlantic's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

44. Therefore, the class is properly defined as:

**All hourly employees of Mid-Atlantic who were, at any point from March 19, 2017 until the date of final judgment in this action, paid "straight time for overtime." ("FLSA Class")**

## CMWA VIOLATIONS

45. Miller brings this claim under the CMWA as a Rule 23 class action.

46. The conduct alleged violates the CMWA (Conn. Gen. Stat. Sections 31-58, et seq.).

47. At all relevant times, Mid-Atlantic was subject to the requirements of the CMWA.

48. At all relevant times, Mid-Atlantic employed Miller and each Class Member with Connecticut state law claims as an "employee" within the meaning of the CMWA.

49. The Connecticut Class that Miller seeks to represent is properly defined as:

**All hourly employees of Mid-Atlantic working in Connecticut from the period of March 19, 2018 until the date of final judgment who were paid "straight time for overtime." ("Connecticut Class")**

50. The CMWA requires employers like Mid-Atlantic to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40)

hours in any one week. Miller and each member of the Connecticut Class are entitled to overtime pay under the CMWA.

51. Mid-Atlantic had a policy and practice paying Miller and each member of the Connecticut Class straight time for overtime and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

52. Miller and each member of the Connecticut Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

53. Miller and each member of the Connecticut Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Mid-Atlantic, as provided by the CMWA.

**CLASS ALLEGATIONS**

54. Miller incorporates all previous paragraphs and alleges that the illegal pay practices Mid-Atlantic imposed on Miller were likewise imposed on the members of the Classes.

55. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the state wage laws of Connecticut.

56. Numerous other individuals who worked with Miller indicated they were paid in the same manner and were not properly compensated for all hours worked as required by state and federal wage laws.

57. Upon information and belief at least 40 other individuals were staffed in Connecticut by Mid-Atlantic and were paid "straight time" for their overtime hours.

58. Based on their experiences and tenure with Mid-Atlantic, Miller is aware that Mid-Atlantic's illegal practices were imposed on the members of the Classes.

59. The members of the Classes were all paid straight time for overtime and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

60. Mid-Atlantic's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the Classes.

61. Miller's experiences are therefore typical of the experiences of the members of the Classes.

62. The specific job titles or precise job locations of the various members of the Classes do not prevent class or collective treatment.

63. Miller has no interests contrary to, or in conflict with, the members of the Classes. Like each member of the Classes, Miller has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

64. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

65. Absent this action, many members of the Classes likely will not obtain redress of their injuries and Mid-Atlantic will reap the unjust benefits of violating the FLSA and applicable state labor laws.

66. Furthermore, even if some of the members of the Classes could afford individual litigation against Mid-Atlantic, it would be unduly burdensome to the judicial system.

67. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

68. The questions of law and fact common to each of the members of the Classes predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Mid-Atlantic employed the members of the Classes within the meaning of the applicable state and federal statutes, including the FLSA and the CMWA;

    b. Whether Mid-Atlantic's pay practice meets the salary basis test;

    c. Whether Mid-Atlantic's decision to pay the members of the Classes straight time for overtime was made in good faith;

    d. Whether Mid-Atlantic's decision to not pay time and a half for overtime to the members of the Classes was made in good faith;

    e. Whether Mid-Atlantic's violation of the FLSA was willful; and

    f. Whether Mid-Atlantic's illegal pay practices were applied uniformly across the nation to all members of the Classes.

69. Miller's claims are typical of the claims of the members of the Classes. Miller and the members of the Classes sustained damages arising out of Mid-Atlantic's illegal and uniform employment policy.

70. Miller knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

71. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

**Count I        Failure to pay Overtime in Violation of FLSA**

72. Defendant's conduct as described above, specifically its conduct in paying straight time for overtime, constitutes a willful violation of the Fair Labor Standards Act and has deprived the Plaintiff and the collective of thousands of dollars in wages all to their loss and detriment.

73. Defendant is liable to Plaintiff and the collective for back wages, liquidated damages, interest, attorneys' fees and court costs.

**Count II       Failure to pay Overtime in Violation of CMWA**

74. Defendant's conduct as described above, specifically its conduct in paying straight time for overtime, constitutes a violation of the Connecticut Minimum Wage Act and has deprived the Plaintiff and the collective of thousands of dollars in wages all to their loss and detriment.

75. Defendant is liable to Plaintiff and the collective for back wages, penalty damages, interest, attorneys' fees and court costs.

**JURY DEMAND**

76. Miller demands a trial by jury.

**PRAYER FOR RELIEF**

77. Miller prays for relief as follows:

    a. An Order designating the FLSA Class as a collective action and an order directing Defendant to supply the names and contact information of the FLSA collective and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. For an Order pursuant to Section 16(b) of the FLSA finding Mid-Atlantic liable for unpaid back wages due to Miller and the Potential Putative FLSA Class for liquidated damages equal in amount to their unpaid compensation;

    c. For an Order designating the state law class as a class action pursuant to Fed. R. Civ. P. 23;

    d. For an Order appointing Miller and their counsel as Class Counsel to represent the interests of the both the federal and state law classes;

    e. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

    f. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Richard E. Hayber*
    **Richard E. Hayber**
    Fed Bar No: ct11629
    Hayber, McKenna & Dinsmore, LLC
    750 Main Street, Suite 904
    Hartford, CT  06103
    rhayber@hayberlawfirm.com
    Ph: 860-522-8888
    F: 860-218-9555

AND

**Michael A. Josephson**
State Bar No. 24014780
(pending *pro hac vice*)
**Richard M. Schreiber**
State Bar No. 24056278
(pending *pro hac vice*)
**Andrew W. Dunlap**
State Bar No. 24078444
(pending *pro hac vice*)
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
rschreiber@mybackwages.com
adunlap@mybackwages.com

AND

Richard J. (Rex) Burch
Texas Bar No. 24001807
(pending *pro hac vice*)
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**